## JOHN LONG and others *v.* ISAAC HOLT.

By virtue of the provisions of the act of 1871–'72, chapter 30, parties have a right to have their suits heard, though such suits may have abated through their own inadvertance or from other causes.

In appeals from the former Superior Courts of Law, purely discretionary powers of such courts were never reviewed by the Supreme Court. Otherwise, in appeals from the Courts of Equity, in which every order and decree of such Court, affecting the rights of parties, were the proper subjects of review by the Supreme Court.

(*Graham* v. *Skinner*, 4 Jones' Eq. 94, cited and approved.)

PETITION, to rehear a decree and former order by the Court of Equity of ALAMANCE county, in 1868, in a petition of the present plaintiffs, *ex parte*, for the sale of land for partition, heard before *Tourgee, J.*, at Fall Term, 1872, of the Superior Court of said county.

His Honor, upon hearing the petition, answer, affidavits, &c., being of opinion that the plaintiffs, through their own laches, had lost their right to have the order and decree re-heard, dismissed the petition. From this order the plaintiffs appealed.

All other facts necessary to an understanding of the point decided, are stated in the opinion of the Court.

*Dillard & Gilmer*, for the petitioners.
*W. A. Graham*, contra.

SETTLE, J. This was a petition brought to the Fall Term, 1860, of the Court of Equity for Alamance county, praying for a sale of the lands of Conrad Long, deceased, and for a division of the proceeds amongst his heirs, some of whom were married women.

A sale was made and the report thereof confirmed at Spring Term, 1861; and thereupon an order was made for

the collection of the purchase money, but there was no or-
der for the distribution of the same.

In 1866, an order was made upon the Master to report
"what money he had collected, what kind, and from whom,
and whether any and how much was still due and uncol-
lected and from whom." The Master, who is the defendant
in this proceeding, made his report to Spring Term, 1867,
when an entry was made on the docket in pencil, "Report
of Master filed."

At Spring Term, 1868, an entry was made upon the
docket in words following, to wit: "Report of the Clerk and
Master as to the collection of purchase money of land con-
firmed and approved."

At Spring Term, 1872, the cause was transferred from the
old Equity docket of Alamance and placed upon the docket
of the Superior Court of that county, in accordance with the
provisions of the act of 1871–'72, chapter 30, and a petition
was then filed to rehear the decree of 1868, which confirmed
the report of the Master as to the collection of the purchase
money.

At Fall Term, 1872, the Master filed his answer, and his
Honor dismissed the petition to rehear, declaring that "the
plaintiffs had been guilty of such laches, in the prosecution
of their claims, that they were not entitled to maintain their
petition in this case." From this order the plaintiffs appeal
to this Court.

This being an old cause in Equity, commenced before the
adoption of our present system, we must deal with it accord-
ing to the old rules of practice.

The decree in 1868 was not final, as there was no order
for distribution of the funds collected, no order for title, nor
for the disposition of costs, and was silent as to the disposi-
tion of a large sum still due and uncollected.

The preamble and the first section of the act of 1871–'72,
chapter 30, are as follows: "Whereas, there are upon the

dockets of the late courts of Equity in this State a consid-- erable number of suits and petitions for the sale and parti-- tion of real and personal property, in which the rights and estates of infants, *feme coverts* and others are concerned, in which orders for collection, orders for distribution and other final orders and decrees have never been made, and which, through the inadvertence of parties, or from other causes, have not been transferred to the dockets of the present Su-- perior Courts, but under existing laws may have abated; therefore, the General Assembly, &c., do enact, That in order to protect the interest of all parties concerned in such causes, and to save costs therein, it shall be lawful for any party, plaintiff or defendant, in any such suit or petition, at any time within twelve months from the ratifi-- cation of this act, to have such suit or petition transferred to the trial docket of the Superior Court, for the county in which the same was pending." Here, then, we have an express declaration of the Legislature in favor of the policy of hearing, trying and disposing of all such cases as the one under consideration, even though they may have abated through the inadvertence of parties or from other causes.

But his Honor dismissed the petition, on the ground of laches; and it is suggested that he only exercised a discre- tion, which this Court cannot review.

In appeals from a Superior Court of Law, the Supreme Court has never reviewed the exercise of a purely discre-- tionary power in the Superior Court, but has been confined to the correction of errors in law. But the Supreme Court sustained a very different relation to the Courts of Equity in this State; and as is said, in *Graham* v. *Skinner*, 4 Jones' Eq. 94, causes might be removed into it from the latter, to be heard for the first time, upon questions of fact as well as of law; and in appeals from the final decrees of the Courts of Equity, the causes were heard in the Supreme Court in the same way. The Supreme Court had therefore the same

materials for forming a correct judgment as the Court of Equity in every case, and upon every question, whether discretionary or otherwise. Hence, we conceive, that every order of the Court of Equity, by which the *rights of the parties* may be affected, may be reviewed in the Supreme Court. The averments in the answer of the defendant may be material and proper to be considered of, on a trial before a jury or on a reference to a commissioner, but they should not have availed to dismiss the petition to rehear, and thereby cut off the plaintiffs from all opportunity of investigating the merits and justice of their cause.

Let it be certified that there is error, &c.

PER CURIAM.                                    Judgment reversed.